## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 13 Case No. 18-10664-MSH |
| MARIA ELENA HARO ACUNA | ) ) |  |
| Debtor | ) ) |  |
|  | ) |  |
| MARIA ELENA HARO ACUNA | ) ) |  |
| Plaintiff | ) |  |
|  | ) | Adversary Proceeding |
| v. | ) ) | No. 18-01063-MSH |
| HSBC BANK USA, N.A., AS TRUSTEE and OCWEN LOAN SERVICING, LLC | ) ) ) |  |
| Defendants | ) ) |  |

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS

### I.   Introduction

Before me is the renewed motion of the defendants, HSBC Bank USA, N.A., as trustee

for investors in a security, and Ocwen Loan Servicing LLC, under Rule 12(b)(6) of the Federal

Rules of Civil Procedure, to dismiss the amended complaint of the plaintiff, Maria Elena Haro

Acuna, who is the debtor in the main case.

### II.   Background

Ms. Haro filed a voluntary petition for relief under chapter 13 of the United States

Case 18-01063   Doc 51   Filed 08/06/20   Entered 08/06/20 15:01:07   Desc Main
Document      Page 2 of 24

Bankruptcy Code[1] on February 28, 2018.   She commenced this adversary proceeding in

connection with her objections to HSBC's proof of claim (Claim No. 2) and surrogate proof of

claim (Claim No. 3) in the main case.[2]   In response to a motion to dismiss, Ms. Haro amended

her complaint (Am. Compl., ECF No. 15).[3]   The defendants then renewed the motion to dismiss

(Defs.' Renewed Mot. to Dismiss, ECF No. 21; Defs.' Renewed Mot. Mem., ECF No. 22)—

supplementing, incorporating, and attaching their original motion to dismiss and memorandum in

support (Defs.' Mot. Mem., ECF No. 10).   Ms. Haro responded in opposition (Pl.'s Opp'n, ECF

No. 28), and the defendants replied (Defs.' Reply, ECF No. 32).

III.   **Legal Standard**

Although the factual allegations set forth in the amended complaint are disorderly and

sometimes unclear, I have accepted the well-pleaded ones as true and have drawn all reasonable

inferences in Ms. Haro's favor for the purpose of evaluating whether she has plausibly stated any

claim to relief.   *See* Fed. R. Civ. P. 8(a)(2), 12(b)(6); Fed. R. Bankr. P. 7008, 7012; *Ashcroft v.

Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007);

*Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012).   I have also evaluated documents not

attached to the amended complaint but upon which Ms. Haro expressly depends for her factual

allegations, including a 2011 state trial court's decision appended to the defendants' motions to

---

[1] References to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.

[2] Claim No. 2 was transferred other than for security in February 2019 to U.S. Bank National
Association, as trustee for the NRZ PassThrough Trust VIII, and again in July 2019 to U.S. Bank
National Association, as trustee for the NRZ PassThrough Trust VIII-B.   No party has sought to
add or substitute either transferee in this proceeding.

[3] Ms. Haro's initial pleading and amended pleading are each styled as an objection to proofs of
claim and counterclaim. These pleadings are in form and substance and have been treated for all
purposes by the parties as a complaint and amended complaint, respectively.

dismiss and certain documents appended to HSBC's proof of claim, as discussed below.   *See*

*Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).[4]

IV.   <u>**Plaintiff's Amended Complaint**</u>

a.   **Factual Allegations**

Ms. Haro, whose first language is Spanish and who "has limited English proficiency,"

immigrated to the United States in 1986.   Am. Compl. ¶ 12.   In 2005, she applied to Fremont

Investment & Loan for a $360,000 mortgage loan to purchase a home in Revere, Massachusetts.

*See id.* ¶¶ 13-14.   Ms. Haro's loan application was "rife with inaccuracies of which Ms. Haro

was not aware."   *Id.* ¶ 17.   Ms. Haro specifies two inaccuracies in particular— the status of her

employment and her income.   *See id.* ¶¶ 18-20.   At the time of her loan application, Ms. Haro

was employed as a laborer in the construction trade but her loan application states that she was

employed as head chef at a restaurant, Tequila Mexican Grill.   *Id.* ¶¶ 18-19.   Ms. Haro

disavows any knowledge of this restaurant or ever having worked in the food industry.   *Id.* ¶ 18.

Further, "[s]he had no idea that the mortgage broker wrongly listed this as her employment."   *Id.*

In her construction job, Ms. Haro earned approximately $3,356 per month.   *Id.* ¶ 20.   Her loan

application stated that she earned $5,984.33 per month from employment at the restaurant.   *Id.*

¶ 20.   Ms. Haro believes that her income was overstated so she would qualify for the loan, and

she does not believe that her employment or income were verified before Fremont approved her

application.   *Id.* ¶¶ 20-21.

Ms. Haro was approved for two mortgage loans equaling the full purchase price of the

Revere property.   *Id.* ¶ 14.   The first loan was for 80 percent of the purchase price, and the

_____

[4] Ms. Haro does not dispute the authenticity of the documents considered.   *See* Pl.'s Opp'n 5-6
& n.2.

3

second was for 20 percent.[5]  *Id.*  The first mortgage secured the 80-percent loan.  *Id.*  The

note provided for an adjustable interest rate starting at 7.3 percent per year for the first two years,

subject to change every six months thereafter, plateauing to a "fully indexed rate" of 10.335

percent.  *Id.* ¶ 15.

Ms. Haro's loan application and mortgage documents were not translated into her first

language, and "[t]he origination process was never properly explained to Ms. Haro, who is not a

native English speaker."  *Id.* ¶ 22.  "[S]he did not know that she had executed two separate

mortgages until well after the closing of the loan."  *Id.*

Ms. Haro's initial monthly payment on the two mortgage loans combined was around

$2,600.  Am. Compl. ¶ 23.  This amount was approximately 77 percent of her actual monthly

gross income.  *Id.*  She "quickly fell behind on her mortgage payments."  *Id.*

In August 2009, Fremont assigned Ms. Haro's first mortgage to HSBC, which recorded

the assignment.  Am. Compl. ¶ 31.  The assignment did not contain restrictive language

subjecting HSBC to certain terms of a preliminary injunction, as required by a state court's

order.  *Id.* ¶¶ 31, 29 (citing *Commonwealth v. Fremont Inv. & Loan*, No. 07-4373-BLS1, 2008

WL 1913940, at *6 (Mass. Super. Ct. Mar. 31, 2008), *aff'd*, 897 N.E.2d 548 (Mass. 2008)).[6]

---

[5]  At some point, the second loan was charged off, and, in June 2018, a discharge of the second mortgage securing it was recorded.  *See* Defs.' Renewed Mot. Mem 7; Defs.' Renewed Mot. Mem. Ex. B, ECF No. 22-2.

[6]  In late 2007, the Massachusetts Attorney General filed a consumer protection enforcement action against Fremont Investment & Loan and its parent company in state court, alleging unfair and deceptive lending practices in connection with mortgage loans for owner-occupied homes from January 2004 through March 2007, with most of the loans having been made in the subprime market and with "a significant number" being in default when the case was commenced, including those containing specific "'presumptively unfair'" features that "'doomed [them] to foreclosure.'"  *Fremont Inv. & Loan*, 897 N.E.2d at 551-53, 554 & n.14.  In February 2008, the state court granted the Commonwealth's request for a preliminary injunction restricting Fremont's ability to foreclose on residential mortgage loans in Massachusetts, and in March 2008, the state court

HSBC initiated a foreclosure of the first mortgage in 2009, held a foreclosure auction in April 2010, and recorded a foreclosure deed, in May 2010, that "purported to convey" the property via the statutory power of sale from HSBC to itself.   *Id.* ¶¶ 35-36.

In June 2010, HSBC sought possession of the property through an eviction action it initiated against Ms. Haro in state court.   Am. Compl. ¶ 37.   A year later, in June 2011, the court awarded possession to Ms. Haro on summary judgment.   *Id.* ¶ 38.   In January 2017, HSBC began a second foreclosure of the first mortgage.   *See id.* ¶¶ 41-42.

On April 20, 2017, Ms. Haro, through counsel, sent a demand letter to HSBC and Ocwen, its mortgage servicer, alleging violations of the state's consumer protection laws.   *Id.* ¶ 43 (citing Mass. Gen. Laws ch. 93A, § 9).   In May 2017, HSBC and Ocwen responded through counsel denying liability and offering Ms. Haro a trial loan modification that could lead to a permanent loan modification.   *Id.* ¶ 44.   The trial loan modification required three monthly payments of $2,239.40 each, amounting to around 66 percent of Ms. Haro's $3,330 monthly gross income.   *Id.* ¶¶ 44, 46.   The defendants "refused" to lower the trial period payment or to disclose what the terms of a permanent loan modification would look like.   *Id.* ¶ 47.   Ms. Haro made the three trial payments but only "by tapping into her savings."   *Id.* ¶ 47.   Ocwen then offered Ms. Haro a permanent loan modification, with the same $2,239.40 per month payment.   *Id.* ¶ 48.   The modification provided for a fixed 4 percent annual interest rate and a $275,922.05

---

modified the preliminary injunction "to require that any assignment, sale, or transfer of ownership rights or servicing obligations by Fremont be conditioned on the assignee's or purchaser's acceptance of the obligations imposed by the preliminary injunction."   *Id.* at 553-55; *see also Fremont Inv. & Loan*, 2008 WL 1913940, at *6 (requiring, among other things, that "assignee agrees in the written assignment to be governed by the terms of the Preliminary Injunction and its obligations").   On direct appellate review, the state's highest court affirmed the lower court's preliminary injunction orders.   *Fremont Inv. & Loan*, 897 N.E.2d at 551, 555 n.15, 562.

balloon payment due in October 2035, the loan's maturity date.  *Id.*  Ms. Haro, through counsel,

requested that HSBC and Ocwen modify the offer "to make the loan affordable" by, for example,

extending the loan's term or further lowering the interest rate, but they "refused to do so."  *Id.*

¶ 50.  Because the modified payments would have been unaffordable, Ms. Haro rejected the

loan modification offer.  *See id.* ¶¶ 46-47, 51.

HSBC subsequently scheduled a March 7, 2018 foreclosure sale.  *Id.* ¶ 54.  Ms. Haro

then filed her bankruptcy petition, prompting a cancelation of the sale.  *Id.*  On May 9, 2018,

HSBC filed a proof of claim in Ms. Haro's bankruptcy case (Claim No. 2) for amounts due on

the first mortgage loan.   On May 23, 2018, Ms. Haro filed a surrogate proof of claim (Claim No.

3) for amounts due on the second mortgage loan.[7]   This adversary proceeding ensued.

### b.  Claims in the Complaint

Ms. Haro divides her amended complaint into seven counts: objection to proof of claim no.

2 (count I), objection to surrogate proof of claim no. 3 (count II), res judicata as to foreclosure

authority (count III), violation of state law pre-foreclosure requirements (count IV), predatory

lending (count V), consumer protection violations (count VI), and breach of contract (count VII).

In count I, Ms. Haro explains that with respect to counts I, II, V, and so much of count VI

as "relies on and/or incorporates [counts] I, II, and V," she "seeks no damages beyond

recoupment."   Am. Compl. ¶ 60.   As to counts III, IV, VII and the balance of count VI, she

seeks "an affirmative recovery."  *See id.* ¶ 61.

---

[7] No creditor filed a proof of claim for the second mortgage loan by the deadline of May 9, 2018,
prompting Ms. Haro as the debtor to file what is commonly referred to as a "surrogate proof of
claim"—that is, a proof of claim filed by one other than the creditor.  *See* 11 U.S.C. § 501(c)
("If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may
file a proof of such claim."); Fed. R. Bankr. P. 3004.

V.    **Defendants' Motion to Dismiss**

The defendants move to dismiss all counts of Ms. Haro's complaint.   As a result of Ms. Haro's untidy pleading presentation in which several counts cross-reference and rely upon each other, I discuss the counts, not in numerical order, but in the order most conducive to an efficient and hopefully understandable disposition.

a.    **Count III: Res Judicata Concerning Lack of Authority to Foreclose**

In count III of her complaint, Ms. Haro asserts that the state trial court in the eviction action "granted summary judgment to Ms. Haro on possession" after concluding that "HSBC had 'not demonstrated that [it] is the proper party to this action'" and "had not properly shown that it had been assigned the First Mortgage or that HSBC was entitled to collect money from Ms. Haro." Am. Compl. ¶¶ 37-38 (alteration in original) (quoting but not attaching the trial court's decision). Ms. Haro subsequently characterizes the court's decision as having concluded that "there was no valid assignment of the First Mortgage from Fremont to HSBC and that therefore the 2010 foreclosure was not valid."   *Id.* ¶ 39; *see also id.* ¶ 66 (asserting that court "definitively held that HSBC had no authority to foreclos[e] and no right to possession of the property at issue"); ¶ 73 (describing court's decision as "HSBC did not have authority to foreclose on the First Mortgage"); ¶ 107 (characterizing decision as "holding that HSBC does not have authority to foreclose").

Ms. Haro asserts, without elaboration, that the parties, facts, and issues now before this Court are the same as those before the state trial court and that the issues "were actually and extensively litigated" and "were essential" to a final judgment on the merits, which was not appealed.   *Id.* ¶¶ 74-78.   Ms. Haro thus concludes that "[u]nder the principles of res judicata, HSBC and Ocwen are barred from re-litigating the issue of whether they have the ability to foreclose on the First Mortgage."   *Id.* ¶ 80.

The defendants disagree with Ms. Haro's characterization of the state trial court's decision, asserting that the court's decision focused on whether HSBC had submitted sufficient documentation to establish standing and did not reach other issues.  *E.g.*, Defs.' Mot. Mem. 13-17.  The defendants have provided a copy of the decision and judgment.  Defs.' Mot. Mem. Ex. B, ECF No. 10-2 (*HSBC Bank USA, N.A. v. Haro*, No. 201014SU000264 (Chelsea Div., Mass. Dist. Ct. June 2011))[8]; *see also* Pl.'s Opp'n 13 n.7 (conceding that court may review such documents in considering whether pleading is subject to dismissal).

Although Ms. Haro references "res judicata," which under applicable Massachusetts law encompasses both the doctrines of claim preclusion and issue preclusion, her recitation of the "principles" indicates she is relying on issue preclusion.  *See Kobrin v. Bd. of Registration in Med.*, 832 N.E.2d 628, 634 (Mass. 2005); *see also* Pl.'s Opp'n 12 (confirming intention to plead issue preclusion in count III).  "[I]ssue preclusion 'prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.'"  *Kobrin*, 832 N.E.2d at 634 (quoting *Heacock v. Heacock*, 520 N.E.2d 151, 152 n.2 (1988)); *see also Giragosian v. Ryan*, 547 F.3d 59, 63 (1st Cir. 2008) (interpreting full faith and credit statute, 28 U.S.C. § 1738, to require federal court to give prior state court judgment same preclusive effect as would apply in rendering state court).

Contrary to Ms. Haro's assertion, the state trial court questioned but did not determine the issue of HSBC's authority to foreclose.  While the eviction case was pending, the Massachusetts Supreme Judicial Court (SJC) issued a decision that was to become a touchstone of foreclosure law and procedure in this state, *U.S. Bank National Association v. Ibanez*, 941 N.E.2d 40 (Mass.

---

[8] Because neither the defendants' exhibit nor the trial court's decision is paginated, the pagination added by this Court's electronic filing system is provided in citations to this exhibit.

2011).   In the eviction action there had been "a number of hearings" and "many arguments

[from Ms. Haro] that the assignment of the mortgage [to HSBC] was made in violation of the

Pooling and Servicing Agreement."   ECF No. 10-2 at 3, 4.   The *Ibanez* decision prompted the

trial court "not [to] address those arguments" and instead to consider HSBC's "standing to bring

[the eviction] action," seeking possession of the premises.   *See id.* at 3-5.   Because HSBC had

not submitted certain assignment-related documents to the court, as deemed necessary in light of

*Ibanez*, the court concluded that HSBC had "not *demonstrated* that it [was] the proper party to

bring [the eviction] action."   *Id.* at 4-5 (emphasis added).   That is, due to a lack of evidence as

to its standing, the court determined that HSBC could not proceed in the eviction case.   It

therefore entered summary judgment in Ms. Haro's favor resulting in her retaining possession of

the property.   The court did not, however, conclude that the assignment or foreclosure had been

invalid or that HSBC could never foreclose on its mortgage and evict Ms. Haro.   On the

contrary, the court left open the possibility that, if the documentation deficiencies were remedied,

standing could be established and the eviction action could proceed.[9]   *Id.*

---

[9] The court's decision states, in part:

> There is no dispute that [Ms. Haro] executed a Note and Mortgage on which she
> defaulted and has ailed [sic] to meet her obligations under the Note and Mortgage.   It
> is not disputed that [Ms. Haro] is not in a position to avoid a foreclosure if one were
> properly brought.   There is no dispute that if there were a proper assignment of the
> Note and Mortgage, [HSBC] would be in a position to proceed with this action.

ECF No. 10-2 at 4.   In the context of the court's full decision, the court's use of hypothetical
language in the above quote is based upon HSBC's evidentiary deficiencies as to establishing its
standing to seek possession—not to conclude "definitively," as suggested by Ms. Haro, that
HSBC lacked authority to foreclose or that HSBC could never foreclose and seek possession.   In
closing, the court reiterated the technical nature of its decision: "There is no question monies are
due from [Ms.] Haro.   [HSBC] has failed to demonstrate that it is the entity which is entitled to
collect those monies."   ECF No. 10-2 at 5.   Procedurally, although a judgment was entered, the
disposition is more properly viewed as a dismissal without prejudice because, upon determining
that HSBC had failed to establish standing, the court effectively determined that it lacked subject
matter jurisdiction, thereby requiring dismissal of the matter without any decision on the merits.

A more detailed preclusion analysis is not necessary here because, as noted, the state trial

court did not reach the issue of HSBC's authority to foreclose, and thus, that court's judgment

has no preclusive effect as to that issue.    Accordingly, the defendants' motion to dismiss will be

granted as to count III.

### b. Count V: Predatory Lending

Ms. Haro brings count V for "predatory lending" against HSBC only.    Citing the

eponymous *Fremont* decision of the state court, she asserts that "Fremont should have

recognized that the Mortgage Loan was unaffordable to Ms. Haro from the day it was originated

and that is was doomed to fail."    Am. Compl. ¶ 94 (citing *Fremont Inv. & Loan*, 897 N.E.2d at

560).    Ms. Haro further asserts that, "[a]s Fremont's assignee, HSBC is liable for Fremont's

origination of Ms. Haro's loan."    Am. Compl. ¶ 95 (citing *Drakopoulos v. U.S. Bank Nat'l*

*Ass'n*, 991 N.E.2d 1086, 1095 n.16 (Mass. 2013)).    Although Ms. Haro neglects to anchor her

predatory lending analysis to a source of authority, the defendants assume, and I concur, that it is

Massachusetts General Laws chapter 93A, the Massachusetts consumer protection statute.[10]

The defendants contend that Ms. Haro's origination-based chapter 93A claims are time-

barred, that even if timely they could not be brought against HSBC due to its assignee status, and

that to the extent they are raised in recoupment they are not plausible.    *E.g.*, Defs.' Mot. Mem.

---

*See* Mass. R. Civ. P. 12(h)(3); Mass. Unif. Summ. Process R. 1; *HSBC Bank USA, N.A. v. Matt*, 981 N.E.2d 710, 717 (Mass. 2013).

[10]  Chapter 93A is the only possible basis.    Ms. Haro appears simply to have omitted the chapter 93A reference from her legal argument.    *Compare* Am. Compl. ¶ 94 ("A lender may be liable for 'the origination of a home mortgage loan that the lender should recognize at the outset that the borrower is not likely to be able to repay.'"), *with Drakopoulos*, 991 N.E.2d at 1094 ("In *Fremont*, we held that a lender may be liable under G.L. c. 93A for 'the origination of a home mortgage loan that the lender should recognize at the outset that the borrower is not likely to be able to repay.'" (quoting *Fremont*, 897 N.E.2d at 560)).

7, 10-11, 20.   Notwithstanding any allegations that might suggest otherwise, because in count V

Ms. Haro "seeks no damages beyond recoupment," the defendants' statute of limitations and

assignee liability arguments need not be considered.[11]   *See* Am. Compl. ¶¶ 60, 95; *see also* Pl.'s

Opp'n 2 ("[Ms. Haro] seeks no affirmative damages from HSBC for the wrongful acts of

Fremont . . . . Ms. Haro's recitations of HSBC's knowledge of Fremont's origination practices

are simply icing on the cake." (citation omitted)).

    In connection with a timely underlying cause of action, recoupment is a common law

defense that may be raised without regard to statutes of limitation, potentially "reduc[ing] or

extinguish[ing] the plaintiff's claim" based upon the "defendant's claim arising out of the

transaction that formed the basis of the plaintiff's claim."   *See Bose Corp. v. Consumers Union

of U.S., Inc.*, 326 N.E.2d 8, 10 (Mass. 1975); *see also May v. SunTrust Mortg., Inc.*, 7 N.E.3d

1036, 1041, 1043 (Mass. 2014).   *Cf.* Mass. Gen. Laws ch. 260, § 36 (reflecting recoupment

concept in modern counterclaim practice).   When a plaintiff's claim is by way of assignment,

while the plaintiff as assignee is not liable for actions solely of the assignor it nevertheless takes

the claim subject to defenses such as recoupment that could be raised against the assignor.   *See*

---

[11] Causes of action under chapter 93A are subject to a four-year limitation period, which begins
to run at the time of injury.   *See* Mass. Gen. Laws ch. 260, § 5A; *Latson v. Plaza Home Mortg.,
Inc.*, 708 F.3d 324, 327 (1st Cir. 2013) (citing *Bowen v. Eli Lilly & Co.*, 557 N.E.2d 739, 741
(Mass. 1990)).   Ms. Haro alleges that, at origination in 2005, the loans were "unaffordable" to
her because the monthly payment equaled approximately 77 percent of her actual gross monthly
income.   Am. Compl. ¶¶ 32, 91, 94.   Thus, the alleged injury occurred in 2005, and the
limitation period expired in 2009—well before Ms. Haro filed her bankruptcy petition and
commenced this action in 2018.   *See Latson*, 708 F.3d at 327; *O'Brien v. Deutsche Bank Nat'l
Trust Co.*, 948 F.3d 31, 35 (1st Cir. 2020).   Such a time-barred claim for affirmative damages
would require dismissal.   *See O'Brien*, 948 F.3d at 35; *Latson*, 708 F.3d at 326-27; *Riley v.
Presnell*, 565 N.E.2d 780, 784 (Mass. 1991).   Likewise, any origination-based claim under
chapter 93A for affirmative damages against HSBC as an assignee would require dismissal,
given that HSBC is not sufficiently alleged to have been involved in any unfair or deceptive acts
at origination.   *See Drakopoulos*, 991 N.E.2d at 1095 n.16.

*Drakopoulos*, 991 N.E.2d at 1095 n.16 (citing *Ford Motor Credit Co. v. Morgan*, 536 N.E.2d 587, 591-92 (Mass. 1989)).

Here, although not the defendant, Ms. Haro assumes a defendant's posture in objecting to timely filed proofs of claim related to her two mortgages.   *See* Am. Compl. ¶¶ 60, 62, 69-70 (appearing to incorporate count V fully into counts I and II strictly as a recoupment defense in objecting to proof of claim and surrogate proof of claim, respectively).   Thus, she is permitted to raise origination-based claims such as those under chapter 93A as defenses in recoupment to the proofs of claim, without regard to statutes of limitation and without regard to whether the alleged debts are being pursued by the original lender or an assignee.   I must therefore consider whether Ms. Haro has alleged sufficient facts to state such a claim.

In count V, Ms. Haro focuses on her allegations that, "based on the factors identified in [*Fremont*]," her "loan was 'presumptively unfair,'" giving rise to a claim under chapter 93A, because it included "predatory features . . . such as a loan-to-value ratio of one hundred percent and an adjustable interest rate with a two-year teaser period with an introductory rate more than three percent below the fully indexed rate."   *See* Am. Compl. ¶¶ 92-93.   She also highlights her allegation that "she was approved for a $360,000 loan consisting of two separate mortgages with initial payments that totaled approximately $2,600 a month" or "approximately 77% of her income."   *Id.* ¶ 91.   Ms. Haro broadly incorporates all other statements made in the pleading but does not specifically identify other facts in support of count V.   *See id.* ¶¶ 90-95.   Based on the limited facts provided in count V and elsewhere in the pleading, drawing reasonable inferences in Ms. Haro's favor, I find that it is plausible that the proof of claim and surrogate proof of claim are subject to recoupment based on Ms. Haro's origination-based claims under chapter 93A.   Thus, I will deny the defendants' motion to dismiss count V insofar as it is limited to recoupment.

12

### c.   Count IV: Violation of Massachusetts General Laws Chapter 244, § 35B

Ms. Haro contends that HSBC and Ocwen published notice of a foreclosure sale without first taking reasonable steps and making a good faith effort to avoid foreclosure, as required by Chapter 244, § 35B(b) of the Massachusetts General Laws.[12]   Am. Compl. ¶¶ 84-89.   While no date of publication is specified, it appears that publication occurred between September 2017, when Ms. Haro rejected the permanent loan modification offer, and March 7, 2018, the date of the scheduled foreclosure sale.   *See* Am. Compl. ¶¶ 44, 47, 51, 54, 87; Mass. Gen. Laws ch. 244, § 14 (setting forth foreclosure sale notice publication requirements).   The defendants contend that Ms. Haro's uncured default occurred years before the enactment and 2012 effective date of § 35B, and thus, § 35B does not apply to any foreclosure of the mortgage at issue here. Defs.' Mot. Mem. 17; Defs.' Renewed Mot. Mem. 2, 7; Defs.' Reply 2, 6-7.

It is without question that § 35B would not have applied to the initial foreclosure by the defendants in 2010 because the statute did not yet exist.   Further, because Ms. Haro's default appears to have been ongoing since before 2010, Ms. Haro may not have been entitled to receive pre-foreclosure notices required under § 35B(c) arising from earlier defaults even after the statute was enacted, as such notices are to be sent concurrently with the default-related pre-foreclosure notice required under § 35A, which Ms. Haro would have received long before § 35B existed.[13]   *See Bank of New York Mellon v. Morin*, 136 N.E.3d 396, 404 & n.5 (Mass.

---

[12] Section 35B of Chapter 244, as well as § 35A, provides consumer protections in connection with certain residential mortgage loan defaults and the nonjudicial foreclosure process in Massachusetts.

[13] In her amended complaint, Ms. Haro does not allege that she failed to receive required notices. Rather, her allegations focus on the substantive steps that the defendants allegedly failed to take under § 35B(b).   In addressing the defendants' arguments attempting to connect all the § 35B requirements to the date of default, however, Ms. Haro asserted that she reinstated the loan after the 2011 eviction proceedings and that "[t]his reinstatement . . . triggered the need to send the

App. Ct. 2019).    The defendants leverage these assumptions to argue that § 35B(b)'s

requirements can never apply to a foreclosure of Ms. Haro's mortgage.[14]  I disagree.

Section 35B(b) contains nothing to indicate that its requirements are connected to the date

of default.   *See* 2012 Mass. Acts 975-82 (§ 2 enacting § 35B), 983 (§ 7 providing § 2 effective

date gap provision), 984 (§ 9 providing § 2 effective date).    Rather, as to "certain mortgage loans,"

§ 35B(b) simply requires the creditor to take reasonable steps and to make a good faith effort to

avoid foreclosure before "publication of notice of a foreclosure sale, as required by section 14."

Mass. Gen. Laws ch. 244, § 35B(b).    The defendants do not dispute that Ms. Haro's loans are

"certain mortgage loans" and do not dispute that § 14's publication requirements—as amended by

the same legislation that enacted § 35B, *see* 2012 Mass. Acts 973-75—apply here.    Thus, before

publishing notice of the March 7, 2018 foreclosure sale, the defendants were required to take

reasonable steps and to make a good faith effort to avoid foreclosure.

Section 35B(b) sets forth basic criteria for compliance:

> A creditor shall have taken reasonable steps and made a good faith effort to avoid
> foreclosure if the creditor has considered: (i) an assessment of the borrower's ability
> to make an affordable monthly payment; (ii) the net present value of receiving
> payments under a modified mortgage loan as compared to the anticipated net
> recovery following foreclosure; and (iii) the interests of the creditor, including, but
> not limited to, investors.

---

notices required by . . . §§ 35A and 35B prior to re-acceleration."   *See* Pl.'s Opp'n 15.   At a
September 2018 hearing in this proceeding, Ms. Haro's counsel stated that the assertion as to
reinstatement had been "accidentally" included due to "a clerical error."

[14] The non-precedential decisions cited by the defendants notwithstanding, the Massachusetts
Appeals Court's recent *Morin* decision shows that it remains an open question "whether, in the
case of a high foreclosure risk loan, a bank has the duty to take reasonable steps and to make a
good faith effort to avoid foreclosure even where the bank was not required to send [§ 35A and
§ 35B notices]."   *See Morin*, 136 N.E.3d at 405 & n.6.

The basic criteria are then further detailed, with examples of what actions by a mortgagee will be deemed to establish a presumption of compliance.   *See* Mass. Gen. Laws ch. 244, § 35B(b)(1)-(2).

Based on Ms. Haro's allegations in connection with the 2017 loan modifications offered by the defendants and her assertion that the defendants did not weigh the net present value of a loan modification against the anticipated net recovery from a foreclosure (item ii above) before publishing notice of the March 7, 2018 foreclosure sale, *see* Am. Compl. ¶¶ 44-54, 87-89, I find that it is plausible that the defendants violated § 35B(b).   Thus, I will deny the defendants' motion to dismiss count IV.

### d. Count VII: Violation of Contractual Duty of Good Faith and Fair Dealing

Ms. Haro asserts that paragraph 22 of her first mortgage requires that the mortgagee comply with applicable law when invoking the statutory power of sale.   Am. Compl. ¶ 105. Rather than asserting that this provision has been breached, Ms. Haro contends that the defendants breached the implied covenant of good faith and fair dealing as to both of Ms. Haro's notes and mortgages by invoking the statutory power of sale and taking steps to foreclose in violation of state law.   *See* Am. Compl. ¶¶ 106-108.   Specifically, Ms. Haro cites her allegations in counts I, III, and IV, respectively, that the defendants 1) "attempt[ed] to foreclose despite lack of a possession [sic] of a note endorsed to HSBC"; 2) "attempt[ed] to foreclose despite the decision of the [state court] holding that HSBC does not have authority to foreclose"; and 3) failed to comply with § 35B.   *See* Am. Compl. ¶¶ 106-108.   Ms. Haro asserts that the alleged breach has caused her financial and emotional damages.   Am. Compl. ¶ 109.

Because the first allegation relies entirely upon a specific allegation in count I, which, as discussed below, is being dismissed, count VII likewise must be dismissed as to that allegation. Because the second allegation relies entirely upon count III, which is being dismissed, count VII

likewise must be dismissed as to that allegation.   Because the third allegation relies entirely

upon count IV, which is not being dismissed, I will deny the defendants' motion to dismiss count

VII as to the alleged failure to comply with § 35B.

### e.   Count VI: Consumer Protection Violations

Ms. Haro contends that "[e]ach of the acts stated in this First Amended [Complaint] . . .

was unfair and/or deceptive" in violation of chapter 93A, causing financial and emotional

damages.   *See* Am. Compl. ¶ 97-99, 102-103.   She asserts that in response to her April 20, 2017

demand letter to the defendants, the "only settlement offer" received was "for a loan modification

that did not take into account her debt-to-income ratio and would have involved payments that

represented more than half of her income."   Am. Compl. ¶¶ 43, 99-100; *see also id.* ¶¶ 44-54.

Apart from referencing the defendants' loan modification offers, Ms. Haro does not

identify in count VI any other alleged acts of the defendants or elaborate on how any other acts

were unfair or deceptive.   *See* Am. Compl. ¶¶ 96-103.   Ms. Haro only vaguely references other

allegations.   *See* Am. Compl. ¶¶ 101 ("violations of these protections intended to safeguard

homeowners as consumers of credit"), 102 ("the above unfair and deceptive actions" and "a

wrongful foreclosure and subsequent further attempts at wrongful foreclosure").   To the extent

Ms. Haro is asserting in count VI chapter 93A claims relating to the origination of her loans,

such claims are duplicative of those asserted in count V and will therefore be dismissed.   To the

extent that she is asserting claims that rely upon count III, which is being dismissed, count VI

will likewise be dismissed.   The remaining chapter 93A claims are addressed below.

The defendants contend that Ms. Haro cannot pursue chapter 93A claims related to their

alleged conduct after April 20, 2017, because she did not send a demand letter to the defendants

raising such claims before filing suit.   Defs.' Mot. Mem. 18-19.   Ms. Haro's only pre-suit

demand letter was sent on April 20, 2017.   This letter could not apply to actions that occurred

after that date, including the defendants' alleged unfair or deceptive conduct in connection with

the loan modification and subsequent foreclosure efforts that are alleged in counts IV and VII to

have violated § 35B(b) and the contractual duty of good faith and fair dealing, respectively.

Under Massachusetts law, at least 30 days before filing suit, a prospective chapter 93A

plaintiff must serve a demand letter upon the prospective defendant, providing sufficient notice

of the unfair or deceptive conduct, injury sustained, and demand for relief, thereby providing the

prospective defendant an opportunity to respond with a reasonable settlement offer.   *See* Mass.

Gen. Laws ch. 93A, § 9(3).   As to actions not mentioned in the demand letter, relief under

chapter 93A is precluded.   *Clegg v. Butler*, 676 N.E.2d 1134, 1141 (Mass. 1997).   The demand

letter is not required in all circumstances, however, including if the prospective defendant does

not maintain a place of business in Massachusetts.   Mass. Gen. Laws ch. 93A, § 9(3); *Moronta*

*v. Nationstar Mortg., LLC*, 64 N.E.3d 1287, 1288-90 (Mass. 2016) (rescript).

Although not stated in her amended complaint, Ms. Haro contends in her opposition to

defendants' motion to dismiss that the defendants do not maintain a place of business in

Massachusetts, and thus, no pre-suit demand letter was required.[15]   Pl.'s Opp'n 16.   In

response, the defendants have effectively conceded that neither of them maintains a place of

business in Massachusetts.   They do state that Ocwen's parent company maintains a place of

business in Massachusetts but cite no authority for their suggestion that the parent company's

place of business is relevant to this analysis.   *See* Defs.' Reply 9.   Thus, subject to further

---

[15] For purposes of evaluating the extent to which Ms. Haro's chapter 93A claims are subject to dismissal, I will consider this fact to have been alleged in her amended complaint, as leave to amend a complaint is ordinarily freely granted.

review as additional facts may warrant, I find that count VI need not be dismissed based on Ms. Haro's failure to send a pre-suit demand letter under chapter 93A.

The defendants assert that, even if no demand letter were required, Ms. Haro has not stated any plausible claim to relief under chapter 93A.   Defs.' Mot. Mem. 20.   In light of Ms. Haro's allegations as to the defendants' conduct in connection with the 2017 loan modification offers and subsequent foreclosure-related conduct, giving rise to the alleged violation of § 35B(b) and breach of the covenant of good faith and fair dealing, I find that related claims under chapter 93A have been plausibly stated.   I also find, however, that no other claims under chapter 93A have been plausibly stated in count VI.   Ms. Haro's broad incorporation of the entire amended complaint into count VI is not sufficient to state additional claims, as neither I nor the defendants must guess as to Ms. Haro's claims and as to which facts are intended to support her claims.

In sum, the defendants' motion to dismiss as to count VI will be denied, in part, and granted, in part, in accordance with the analysis set forth above.   Count VI will be dismissed except to the extent that Ms. Haro is bringing chapter 93A claims related to the defendants' post-April 20, 2017 conduct noted above.

### f.  Count I: Objection to Proof of Claim No. 2

For reasons asserted in this count, as well as in counts III through VII which Ms. Haro incorporates into this count, Ms. Haro objects to HSBC's proof of claim and contends that the claim should be disallowed in its entirety.[16]   Am. Compl. ¶¶ 59-66.   To the extent that the other

---

[16] Ms. Haro's schedules indicate that this debt has been liquidated.   *See* Sched. D 2.2, ECF No. 1.   Nevertheless, she "requests that the Court liquidate [the claim] . . . and apply [it] against any and all claims of HSBC, reducing HSBC's allowed claim amount to zero and thereby disallowing [HSBC's] Proof of Claim," Am. Compl. ¶ 62.

counts have been dismissed above, Ms. Haro cannot rely on those counts in seeking the claim's

disallowance, and thus, count I is likewise dismissed to the same extent.   As to reasons that are

exclusive to count I, Ms. Haro appears to identify four, which I consider in turn.

### i.  Res Judicata and Standing (Alternatives to count III)

Ms. Haro offers as "alternative" arguments to those in count III that:

> [T]he Court disallow the Proof of Claim in full either a) on the ground that the claim
> itself is barred by res judicata or b) because the damages Ms. Haro has suffered on
> account of a foreclosure that was wrongfully undertaken, since HSBC could not
> prove its standing to foreclose under the principles of res judicata, outweigh [sic]
> any amounts Ms. Haro may owe to HSBC.

Am. Compl. ¶ 63.   Ms. Haro offers no explanation as to how the claim itself is barred by res

judicata, and she fails to differentiate the second alternative from her claims in count III, which,

for reasons already stated, will be dismissed.   As to either alternative, Ms. Haro has failed to

state a plausible claim to relief.   Thus, the defendants are entitled to dismissal of these

alternative claims in count I.

### ii.  Noteholder status

Referring to a copy of the promissory note appended to HSBC's proof of claim, Ms. Haro

asserts that the note "does not appear to be endorsed, either specifically and/or in blank," and thus,

HSBC "has not proven its status as the holder of the [note]."   Am. Compl. ¶ 64 (citing Claim No.

2, 196-200).   Ms. Haro's assertion in count VII that the defendants have "attempt[ed] to foreclose

despite lack of a possession [sic] of a note endorsed to HSBC," Am. Compl. ¶ 108, appears to be

based solely upon Ms. Haro's count I allegation, as no other supporting facts are alleged.

The defendants assert that Ms. Haro's allegations are baseless and that the copy of the

note indisputably shows that it has been endorsed in blank.   Defs.' Renewed Mot. Mem. 7;

Defs.' Reply 5.   Ms. Haro does not squarely address the defendants' argument, other than to

suggest that her allegations must be accepted as true for the purpose of ruling on the defendants'

motion to dismiss.   Pl.'s Opp'n 17 n.10.   At a September 2018 hearing in this matter, Ms.

Haro's counsel attempted to expand her argument, asserting that although a copy of the note

endorsed in blank may have been attached to the proof of claim, such a copy is not evidence that

HSBC holds the original and that discovery is required to resolve the matter.

    Given that Ms. Haro has offered no basis for her assertion that the copy of the promissory

note lacks an endorsement (or that HSBC lacks possession of the original) and given that she has

not addressed the endorsement that does appear at the end of the copy of the note, *see* Claim No.

2, 200, Ms. Haro's assertion lacks sufficient factual support and is too speculative to state a

plausible claim for relief.   *See Twombly*, 550 U.S. at 555.   Accordingly, count I will be

dismissed as to this claim.

### iii.   Unconscionability

    Ms. Haro contends that "for the reasons laid out in the [amended complaint's] Statement

of Facts . . . the underlying mortgage and note are unconscionable, as they were doomed to fail

from the start, and therefore may not be enforced."   Am. Compl. ¶ 65.   Unconscionability—

"'determined on a case-by-case basis, with particular attention to whether the challenged

provision could result in oppression and unfair surprise to the disadvantaged party'"—is a

common law affirmative defense to the enforcement of a contract and may be raised against an

original contracting party or that party's assignee.   *See Drakopoulos*, 991 N.E.2d at 1095-96 &

n.18 (quoting *Waters v. Min Ltd.*, 587 N.E.2d 231, 233 (Mass. 1992)); *see also Bose Corp. v.

Ejaz*, 732 F.3d 17, 23 (1st Cir. 2013) (applying Mass. law).   The defendants do not specifically

address Ms. Haro's unconscionability defense, but I find that a plausible objection to HSBC's

claim has been stated here and thus will deny the motion to dismiss count I as to this claim.

### iv. Costs

Relying on the state trial court decision in the eviction action, Ms. Haro contends that

HSBC is not entitled to foreclosure, eviction, maintenance, utility, or other costs because it

"improperly claimed ownership of the property."   Am. Compl. ¶ 66 (asserting that state trial

court "has definitively held that HSBC had no authority to foreclos[e] and no right to

possession").   For the reasons set forth above in the discussion of count III, this basis for

objecting to HSBC's claim is not plausible and will be dismissed.[17]

### g. Count II: Objection to Surrogate Proof of Claim No. 3

For reasons asserted in this count, as well as in counts III through VII, which Ms. Haro

appears to incorporate into this count, Ms. Haro objects to her surrogate proof of claim for the

second mortgage and contends that the claim should be disallowed in full.[18]   *See* Am. Compl.

¶¶ 68-70.   To the extent that the other counts will be dismissed as discussed above, Ms. Haro

cannot rely on those counts in seeking the claim's disallowance, and thus, count II will likewise

be dismissed to the same extent.   As in count I, Ms. Haro raises unconscionability as an

affirmative defense to enforcement of the second mortgage and note.   *See* Am. Compl. ¶ 71.

Although the defendants do not specifically address Ms. Haro's defense, for the reasons

---

[17] Ms. Haro also asserts that property inspection fees included in HSBC's proof of claim "are
duplicative and excessive."   Am. Compl. ¶ 66.   Defendants have not addressed this assertion.

[18] As noted, in certain circumstances, a debtor is permitted to file a surrogate proof of claim.
*See* 11 U.S.C. § 501(c); *supra* note 7.   Further, a party in interest is permitted to object to a
proof of claim.   *See* 11 U.S.C. § 502(a) (deeming proof of claim to be allowed "unless a party in
interest . . . objects").   No party has directly addressed Ms. Haro's status as a party in interest or
ability to object to a surrogate proof of claim that she herself filed.   For the purposes of ruling
on the defendants' motion to dismiss, I assume without deciding that Ms. Haro has standing to
object to the surrogate proof of claim.

discussed above with respect to proof of claim no. 2, I find that a plausible unconscionability-based objection to the claim has been stated.

The defendants contend that count II is moot because the indebtedness arising from the second mortgage loan has been charged off and a discharge of the second mortgage has been recorded.   Defs.' Renewed Mot. Mem 7; Defs.' Renewed Mot. Mem. Ex. B, ECF No. 22-2.   Ms. Haro has not addressed whether count II is moot on this basis, but, generally, a debt being charged off on the books of an obligee does not eliminate the obligor's legal liability for the debt.   *Cf. Kelly v. Wolpoff & Abramson, L.L.P.*, 634 F. Supp. 2d 1202, 1208-11 (D. Colo. 2008) (concluding that accounting practice of charging off delinquent consumer credit card debt was inadequate alone to extinguish debt).   Thus, mootness has not been established here, as Ms. Haro may still wish to dispute her liability for the now unsecured debt and to pursue related claims.

### h.  All Counts—The 2008 Forbearance Agreement

Finally, the defendants contend that Ocwen should be dismissed entirely from this case based upon a February 2008 forbearance agreement between Ms. Haro and Ocwen in which Ms. Haro waived claims against Ocwen.   Defs.' Mot. Mem. 5, 11-13.   In response, Ms. Haro contends that the forbearance agreement is not properly before the Court because it is not referenced in her amended complaint.   Pl.'s Opp'n 11 & n.5.   Ms. Haro further contends, however, that through the agreement, she purportedly released claims that existed at the time of the agreement—not future claims.   Ms. Haro then quotes from the agreement, Pl.'s Opp'n 11, which is appended to HSBC's proof of claim, Claim No. 2, 167-70.   The agreement's language limits the release of claims to those that "may exist now," meaning February 2008, when the agreement was executed.   Claim No. 2, 167.   Ms. Haro notes that she is not bringing any pre-February 2008 claims against Ocwen.   The defendants do not dispute Ms. Haro's response.   *See*

*generally* Defs.' Reply.   Thus, I will deny the defendants' motion to dismiss to the extent that

Ocwen's dismissal is sought based upon the 2008 forbearance agreement.

**VI.    <u>Conclusion</u>**

As set forth above, the defendants' renewed motion to dismiss will be granted as to count

III and denied as to counts IV and V.   As to counts I, II, VI, and VII, the motion will be granted,

in part, and denied, in part, as summarized below.

Count I will be dismissed to the extent that it relies upon any other count that is being

dismissed.   It will also be dismissed as to its alternative arguments of res judicata and standing,

its claim related to noteholder status, and its claim challenging HSBC's entitlement to costs due

to HSBC's allegedly improper claim to ownership of the property.   To the extent that count I

relies upon other counts that are not being dismissed, those claims will survive dismissal, as will

count I's unconscionability defense to proof of claim no. 2.

Count II will be dismissed to the extent that it relies upon any other count that is being

dismissed.   To the extent that count II relies upon other counts that are not being dismissed, those

claims will survive dismissal, as will count II's unconscionability defense to proof of claim no. 3.

Count VI will be dismissed to the extent that it relies upon count III and to the extent that it

is duplicative of count V.   Count VI will survive dismissal only to the extent that it asserts chapter

93A claims in connection with the defendants' post-April 20, 2017 conduct giving rise to the

alleged violation of § 35B(b) (count IV) and breach of the covenant of good faith and fair dealing

(count VII).   To the extent that any other claims are alleged in count VI, they will be dismissed.

Count VII will be dismissed to the extent that it relies upon count I's noteholder status

claim that is being dismissed and to the extent that it relies upon count III which is being

dismissed.    Count VII will survive dismissal to the extent that it relies upon the defendants'

alleged violation of § 35B(b) (count IV).

      A separate order shall enter.


Dated: August 6, 2020                             By the Court,


                                                            Melvin S. Hoffman
                                                            U.S. Bankruptcy Judge


            Counsel Appearing:     Alexa Rosenbloom, Esq.
                                       Matthew Brooks, Esq.
                                         Greater Boston Legal Services
                                         Boston, MA
                                         for the Plaintiff Maria Elena Haro Acuna

                                         Samuel C. Bodurtha, Esq.
                                         Hinshaw Culbertson LLP
                                         Boston, MA
                                         for the Defendants HSBC Bank USA, N.A., as trustee,
                                         and Ocwen Loan Servicing